# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

HECTOR SANTIAGO, # 318053,

        Petitioner,

v.                                    Case Number: 07-cv-15455
                                    Honorable Gerald E. Rosen

RAYMOND BOOKER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

On December 21, 2007, Petitioner Hector Santiago, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking habeas relief from his convictions for first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b), and armed robbery, MICH. COMP. LAWS § 750.529, imposed by an Oakland County, Michigan, circuit court jury on July 21, 2000. Petitioner was acquitted of an additional count of conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157a. He is currently imprisoned at the Saginaw Correctional Facility in Freeland, Michigan, serving a life sentence without parole for the felony-murder conviction and eighteen to thirty years for the armed-robbery conviction. For the reasons stated below, the Court will deny the petition. The Court will also decline to issue Petitioner a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

# I. Background

## A. Substantive Facts

Petitioner Hector Santiago's conviction arose from the shooting death of Tony Sanchez. Mr. Sanchez owned a landscaping business. Petitioner and his cousin, co-defendant Juan Santiago,[1] were employees of Mr. Sanchez. It was customary for Sanchez's employees to come to his home to either get paid for their previous work[2] or to receive work orders for the day.

At 7:00 a.m. on September 20, 1999, Hector, Juan and Peter Aponte left in Hector's sister's car[3] to go to Sanchez's house so that Hector and Juan could pick up their pay. Hector was driving. On the way, they picked up Juan's brother, David Santiago.[4] According to the trial evidence, while on the way to Sanchez's home, knowing that Sanchez would have cash on him and Juan Santiago being disgruntled about not getting paid in a timely manner, a decision was made to rob Sanchez. David Santiago testified that while in the car, Juan, Hector and Aponte also discussed killing Sanchez, though at the time, he did not think they were serious. In a statement given to the police, Hector stated that Juan had said if Sanchez

---

[1] Hector and Juan were tried jointly, but before separate juries. A third co-defendant, Peter Aponte, was tried separately. Hector and Aponte were convicted; Juan was found not guilty based upon a duress defense.

[2] Sanchez typically paid his workers in cash.

[3] Hector's sister, Morari, was married to Aponte.

[4] According to the trial testimony, once they arrived at Sanchez's house, David left the group to go to work.

did not pay him that day, he was going to kill him, and Aponte volunteered to do the killing. Hector said that Aponte had a gun with him on the day in question.

According to the testimony at trial, Juan Santiago was angry because Sanchez did not pay him that morning, although he did pay Hector. Though Hector admitted to the police that he agreed to be part of the robbery of Sanchez and that the original plan was that he was going to get part of the money, he told the police that after Sanchez paid him he changed mind. Nevertheless, after he got paid, he agreed to drive Juan and Aponte back to Sanchez's house and dropped them off about a block away and agreed to return in a half hour to pick them up. He admitted he knew they intended to rob Aponte.

Sanchez was killed by a gunshot wound to head. His wallet and the payroll money were taken. Juan testified that Aponte did the shooting. Petitioner was tried and convicted under a theory of aiding and abetting the murder and robbery.

## B. Procedural Facts

Following his sentencing, Petitioner, through counsel, filed an appeal of right in the Michigan Court of Appeals, raising the following: (1) he was incompetent to stand trial, (2) the evidence was insufficient to support his conviction, (3) the verdict was against the great weight of the evidence, (4) his trial counsel was ineffective, (5) the trial court erred when it refused to sever the trials, (6) he was denied the right to present a defense, (7) the prosecutor committed misconduct, and (8) there were cumulative trial errors. On the same day that Petitioner's appellate brief was filed in the Court of Appeals, appellate counsel also filed a

motion to remand, seeking a hearing in the trial court on the issues of competency and ineffective assistance of counsel. The Michigan Court of Appeals denied Petitioner's motion to remand "for failure to persuade the Court of the necessity of the remand at this time." *People v. Santiago*, No. 245582 (Mich.Ct.App. Mar. 29, 2005).

While his appeal was pending, Petitioner filed a motion for a new trial in the trial court, alleging, among other things, that he was not competent to stand trial and that his trial counsel had been ineffective for failing to raise that issue. The trial court denied the motion. *People v. Santiago*, No. 99-169672-FC (Wayne County Circuit Court, Nov. 8, 2002).

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Santiago*, No. 245582, 2005 WL 2994585 (Mich.Ct.App. Nov. 8, 2005).

Subsequently, Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. The Michigan Supreme Court denied Petitioner's application "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Santiago*, 477 Mich. 880, 721 N.W.2d 600 (2006).

Petitioner did not file a writ of certiorari in the United States Supreme Court. Rather, Petitioner filed this habeas petition, raising the following claims: (1) he was not competent to stand trial, (2) there was insufficient evidence to support the felony-murder conviction, (3) trial counsel was ineffective, (4) the trial court erred when it failed to sever the trials, (5) he was denied his right to present a defense, and (6) the prosecutor committed repeated acts of misconduct.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions.  Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief.  Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."  *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts.  *Williams*, 529 U.S. at 407-08.

Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the Court proceeds to the merits of the habeas petition.

### III. Discussion

### A. Claim I–Incompetent to Stand Trial

In his first habeas claim, Petitioner contends that the state courts erred in denying his request for a competency hearing. Petitioner claims that "[t]he trial court abused its discretion in denying the motion for a nunc pro tunc competency hearing" and "[t]he Court of Appeals issued an opinion that was contrary to, or involved an unreasonable Application of, clearly established Federal law, as determined by the Supreme Court of the United States." Specifically, Petitioner cites *Pate v. Robinson*, 383 U.S. 365 (1966), and claims that,

because he had raised a bona fide doubt as to his competence to stand trial before the state courts, he is entitled to a new trial or a full forensic evaluation by way of a writ of habeas corpus.

The Michigan Court of Appeals, the last court to issue a reasoned decision on this issue, stated in pertinent part:

> Defendant first argues that the trial court erred in denying his post-judgment motion for an evidentiary hearing on the issue of his competency to stand trial. We disagree.

> A trial court's "decision as to the existence of a 'bona fide doubt' [concerning competency] will only be reversed where there is an abuse of discretion." *People v. Harris*, 185 Mich.App 100, 102; 460 NW2d 239 (1990). The test for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *People v. Belanger*, 73 Mich.App 438, 447; 252 NW2d 472 (1977), quoting *Dusky v. United States*, 362 U.S. 402; 80 S Ct 788; 4 L.Ed.2d 824 (1960). "A criminal defendant is presumed to be competent to stand trial absent a showing that 'he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner.'" *Harris*, *supra* at 102, quoting MCL 330.2020(1).

> After conviction, "an issue respecting competency can be determined by a motion for a new trial with supporting affidavits or evidence showing substance to the claim that defendant was incompetent at the time of the original trial." *People v. Lucas*, 393 Mich. 522, 528; 227 NW2d 763 (1975). The defendant must present "evidence of incompetence," *People v. Blocker*, 393 Mich. 501, 508; 227 NW2d 767 (1975), sufficient to raise a "bona fide doubt" concerning his competency at the time of trial, *Harris*, *supra* at 102. "If such duly-supported motion is filed, the trial court is obligated to hold a hearing on the motion." *Lucas*, *supra* at 528-529; *see also Blocker*, *supra* at 510.

> In this case, defendant submitted evidence showing that he is prone to depression and anxiety, and was believed to have an IQ of fifty at the age of

fifteen. He also presented evidence suggesting that he may have been affected by his mother's difficulties in coping with her brother's death. This evidence fails to indicate, however, that defendant was not competent at the time of trial. Defendant also submitted affidavits from himself and his mother averring that he was depressed and anxious during trial, and that he was unable to discuss the case intelligently with his attorney or understand the proceedings. However, these affidavits are conclusory and self-serving, and not factual in nature. The affidavit submitted by trial counsel averring that, based on defendant's history and difficulties communicating with him, defendant "may have been incompetent to assist with his defense," is based more on hearsay rather than counsel's observations concerning defendant's competence. Significantly, the issue of defendant's competency was never raised at the time of defendant's trial, and the transcripts of defendant's interviews with the police support that he was coherent and appropriate.

We agree with the trial court that defendant failed to raise a bona fide question concerning his competency at the time of trial, particularly that he was unable to consult with and assist his attorney, or that he did not have a rational or factual understanding of the nature and object of the trial proceedings. Therefore, the trial court did not abuse its discretion in denying defendant's post-judgment motion for an evidentiary hearing or forensic evaluation on the question of defendant's competency at the time of trial.

*Santiago*, No. 245582, 2005 WL 2994585, at *1-2.

The Due Process Clause of the Fourteenth Amendment prohibits the prosecution of a criminal defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992). The following two cases set forth the mental competency standard: *Dusky v. United States*, 362 U.S. 402 (1960) and *Drope v. Missouri*, 420 U.S. 162 (1975). *See Indiana v. Edwards*, --- U.S. ----, ----, 128 S.Ct. 2379, 2383 (2008). A defendant is competent to stand trial when he has sufficient present ability to consult with a lawyer and a rational and factual understanding of the proceedings against him. *Dusky*, 362 U.S. at 402; *Drope*, 420 U.S. at 171. A defendant's federal due process rights are violated by a court's failure to

conduct a competency hearing where there is "substantial evidence" of a defendant's incompetence. *Pate*, 383 U.S. at 375, 385-386. However, "the [*Pate*] Court did not prescribe a general standard for determining whether the trial court should resort to evidentiary proceedings." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (quoting *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983)). Rather, the test has been stated as "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Filiaggi*, 445 F.3d at 858 (quoting *Williams*, 696 F.2d at 467).

"Although retrospective determinations of competency are not prohibited, they are disfavored, and the Court will give considerable weight to the lack of contemporaneous evidence of [a] petitioner's incompetence." *Thirkield v. Pitcher*, 199 F.Supp.2d 637, 653 (E.D. Mich. 2002). Finally, in the context of a federal habeas proceeding, "[a] determination of competence is a factual finding to which deference must be paid." *Filiaggi*, 445 F.3d at 858 (citing *Thompson v. Keohane*, 516 U.S. 99, 110-111(1995)).

While Petitioner uses the language relevant to federal law (i.e. "contrary to" and "unreasonable application of") in his argument, he fails to demonstrate just how the state courts' rulings fall within this language. In other words, Petitioner has not demonstrated how, if at all, the Michigan courts' rulings on his motion for a nunc pro tunc competency hearing is contrary to, or even an unreasonable application, of any Supreme Court precedent. In fact, Petitioner appears to agree that the Michigan Court of Appeals applied the correct

Supreme Court precedent. Rather, he simply appears to disagree with the state courts' conclusion that he was not entitled to a nunc pro tunc competency hearing, which is insufficient to warrant habeas relief.

The materials that Petitioner brought to the attention of the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court (and which he now brings to this Court's attention), when reviewed in their entirety do not reveal an individual unable to consult with his lawyer with a reasonable degree of rational understanding or an individual unable to have a rational or factual understanding of the proceedings against him. Petitioner has not shown that the state courts' assessment of most of the materials he presented (that they were "conclusory," "self-serving," "not factual in nature," "based more on hearsay") is unreasonable, especially in regard to trial counsel's affidavit.

The Michigan Court of Appeals noted that "[t]he affidavit submitted by trial counsel averring that, based on defendant's history and difficulties communicating with him, defendant 'may have been incompetent to assist with his defense,' is based more on hearsay rather than counsel's observations concerning defendant's competence." *Santiago*, No. 245582, 2005 WL 2994585, at *1-2. Even where personal observations are noted, they are limited to such comments as "I found Hector to be a shy and withdrawn person." In addition, many of the documents relate to assessments made of Petitioner as long as five years earlier. Furthermore, to the extent that a court would consider these non-contemporaneous materials, the fact that Petitioner may have at one point had an IQ of 50 or that he may have been on Prozac at one time, does not per se mean that he was incompetent to stand trial. *See Hastings*

10

*v. Yukins*, 194 F.Supp.2d 659, 671-672 (E.D. Mich. 2002) (citing *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000)).

Additionally, some of the materials formally assessing Petitioner more contemporaneously with his trial (i.e. records from the Michigan Department of Corrections concerning examinations within several months of Petitioner's conviction) indicate that he was "free from any signs or symptoms suggestive of major mental illness involving psychosis, organicity, or major depression" and found no current evidence of any serious impairment of either thought or mood." Those records show that, while he might have been suffering from "panic attacks," that did not mean he was suffering from panic attacks during trial and, even if he were then, the trial records do not indicate that there were disruptions during trial from any purported panic attacks that would have rendered Petitioner incompetent.

The post-conviction documents also reflect that Petitioner had received his high school diploma, thereby raising some questions about the validity or at least the relevance of the prior determination concerning Petitioner's IQ. Furthermore, the Bender Gestalt test administered to him does not show a developmental lag. Finally, both the extensive interviews conducted of Petitioner by the police and the trial court's own observations (noted in her ruling denying Petitioner's motion for a nunc pro tunc competency hearing) indicate that Petitioner was acting and responding appropriately and rationally during the period of time prior to, and during, trial. Further, the trial record itself is devoid of any "questionable actions" by Petitioner that would call into question his competence. *See Chapin v. Marshall*,

704 F.2d 335, 337, n. 1 (6th Cir. 1983).

Here, Petitioner has not shown that the state courts unreasonably determined the facts on the issue of whether to grant his motion for a nunc pro tunc competency hearing. The Court therefore concludes that he is not entitled to habeas relief on this claim.

## B. Claim II–Insufficient Evidence

In his second habeas claim, Petitioner alleges that the prosecutor failed to introduce sufficient evidence to support his conviction.

In its opinion denying this claim, the Michigan Court of Appeals stated:

> Next, defendant argues that there was insufficient evidence to support his felony murder conviction. We disagree.
>
> The sufficiency of the evidence is reviewed by evaluating the evidence and any reasonable inferences drawn from the evidence, in the light most favorable to the prosecution, to determine whether a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. *People v. Petrella*, 424 Mich. 221, 268-270; 380 NW2d 11 (1985); *see also People v. Hampton*, 407 Mich. 354, 368; 285 NW2d 284 (1979). The resolution of credibility disputes is within the exclusive province of the trier of fact, *People v. Vaughn*, 186 Mich.App 376, 380; 465 NW2d 365 (1990), which may draw reasonable inferences from the evidence. *People v. Reddick*, 187 Mich.App 547, 551; 468 NW2d 278 (1991).
>
> To convict a defendant on an aiding and abetting theory, the prosecution must show that the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and that he either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave aid or assistance. *People v. Jones (On Rehearing)*, 201 Mich.App 449, 451; 506 NW2d 542 (1993). The amount of aid or assistance given is immaterial as long as it had the effect of inducing or encouraging the crime. *People v. Palmer*, 392 Mich. 370, 378; 220 NW2d 393 (1974). Mere presence at the scene, even with knowledge that a crime will be committed, is insufficient. *People v. Youngblood*, 165 Mich.App 381, 386;

418 NW2d 472 (1988). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v. Turner*, 213 Mich.App 558, 569; 540 NW2d 728 (1995), *overruled in part on other grounds in People v. Mass*, 464 Mich. 615, 627-628; 628 NW2d 540 (2001).

Regarding aiding and abetting felony murder, "[t]he requisite intent is that necessary to be convicted of the crime as a principal," i.e., malice. *People v. Kelly*, 423 Mich. 261, 278; 378 NW2d 365 (1985). "[I]t therefore must be shown that the aider and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and wilfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm ." *Id.* at 278; *see also People v. Barrera*, 451 Mich. 261, 294; 547 NW2d 280 (1996). "[I]f the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and willful disregard' sufficient to support a finding of malice . . . ." *Kelly*, *supra* at 278-279 (citation omitted).

In this case, the evidence indicated that defendant was aware that codefendant Peter Aponte had a gun and planned to rob the victim. Additionally, defendant admitted that Aponte had discussed killing the victim. Despite this knowledge, defendant drove Aponte and Juan Santiago to the victim's home, dropped off Aponte and Juan Santiago as requested, knowing what they intended to do, and agreed to pick them up if they needed a ride home. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a reasonable jury to find beyond a reasonable doubt that defendant provided assistance in the commission of the crime with knowledge of Aponte's intent to rob and kill the victim.

*Santiago*, No. 245582, 2005 WL 2994585, at *2-3.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1), a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom.*, *Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F.Supp.2d 103, 106 (D. Mass. 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n. 12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n. 16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In this case, it is necessary to understand the elements of an aiding and abetting charge

14

in Michigan. The Michigan statute, Mich.Comp.Laws § 767.39, provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

*People v. Kelly*, 423 Mich. 261, 278, 378 N.W.2d 365, 372 (1985).

Here, the Michigan Court of Appeals's analysis of Petitioner's sufficiency of the evidence claim accurately reflects Michigan law. Petitioner's complaints regarding the analysis of the evidence undertaken by the Michigan Court of Appeals is of no consequence given the presumption of correctness discussed above. Petitioner has not shown that these factual findings are incorrect. His mere disagreement with the analysis of the evidence undertaken by the Court of Appeals is not grounds for granting him federal-habeas relief. And, to the extent that the analysis undertaken by the Court of Appeals involves an interpretation or the discussion of the elements of state law offenses (i.e. first-degree felony murder, aiding and abetting first-degree felony murder), it is purely a matter of state law and is not cognizable in federal habeas review. *See Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 951(1983).

Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief on his insufficient-evidence claim.

### C. Claim III–Ineffective Assistance of Counsel

In his third habeas claim, Petitioner alleges that he was denied the effective assistance of trial counsel. Specifically, he argues that trial counsel failed to investigate and pursue an

insanity defense, failed to move to suppress his statements to the police, failed to move for a separate trial, and failed to offer evidence of his intellectual limitations. Here, the Court finds that the Michigan Court of Appeals correctly analyzed his claim of ineffective assistance of counsel using the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).

As the Supreme Court noted in *Strickland*, 466 U.S. at 689 (citations omitted):

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Obviously, this does not mean that a trial counsel's tactical decisions are completely immune from Sixth Amendment review. However, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

A review of Petitioner's claims in his habeas petition concerning the actions or the inactions of his trial counsel indicate that they were rejected by the Michigan Court of Appeals because they were unsubstantiated (i.e., no record evidence that Petitioner had a viable insanity defense—therefore no basis for trial counsel to have raised an insanity

defense; no record evidence that Petitioner was "in custody" when he made his statements to the police—therefore no basis for trial counsel to move to suppress Petitioner's statements for failure to advise him of his rights; no evidence that trial counsel filing a written brief to supplement his oral motion for severance would have resulted in actual severance of Petitioner's trial from those of his co-defendant—therefore no prejudice from his failure to do so; and, as there is no longer a viable "diminished capacity" defense under Michigan law, trial counsel could not have been ineffective for failing to present evidence of Petitioner's "intellectual limitations" short of insanity). Therefore, Petitioner cannot argue that the state courts' ruling on his ineffective assistance of counsel claims is objectively unreasonable, where he was unable to substantiate those claims before the state courts. He is therefore not entitled to habeas relief on this claim.

### D. Claim IV–Trial Severance

In his fourth habeas claim, Petitioner argues that he is entitled to habeas relief because the state courts denied his request to sever his trial from that of his co-defendant Juan Santiago.

In its opinion denying this claim, the Michigan Court of Appeals stated:

> The decision to sever or join the trials of codefendants lies within the discretion of the trial court. *People v. Hana*, 447 Mich. 325, 331, 346; 524 NW2d 682 (1994), *amended* 447 Mich. 1203 (1994). Severance is mandated by MCR 6.121(C) only when a defendant clearly and affirmatively demonstrates through an affidavit or offer of proof that his substantial rights will be prejudiced by a joint trial and that severance is the necessary means of rectifying the potential prejudice. *Id.* at 331, 346. "The failure to make this showing in the trial court, absent any significant indication on appeal that the

requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id.* at 346-347.

Although our Supreme Court has "recognize[d] that a joint trial of codefendants presenting antagonistic defenses has serious negative implications for the accused[,]" "[i]nconsistency of defenses is not enough to mandate severance; rather, the defenses must be 'mutually exclusive' or 'irreconcilable.'" *Id.* at 347, 349-350. "Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice" to require severance. *Id.* at 349, quoting *United States v. Yefsky*, 994 F.2d 885, 896 (CA 1, 1993). Rather, to warrant reversal, "[t]he tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.* at 349, quoting *Yefsky*, *supra* at 897.

In this case, defendant and codefendant Juan Santiago were tried jointly, but before separate juries. "The use of separate juries is a partial form of severance to be evaluated under the standard. . . applicable to motions for separate trials." *Id.* at 331. In such cases, "[t]he issue is whether there was prejudice to substantial rights after the dual-jury procedure was employed." *Id.*

Defendant and Juan Santiago both blamed codefendant Aponte. They each agreed that defendant's role in the offense was to drive Aponte and Juan Santiago to a location near the victim's home. Juan Santiago claimed that whatever he and defendant did was compelled by Aponte's threats. It is apparent that defendant's and Juan Santiago's defenses were not mutually inconsistent, let alone irreconcilable. Further, defendant's fear of being cross-examined by Juan Santiago's attorney if he testified did not justify severance.

Because dual juries were used, there was no danger that a single jury would convict one defendant, despite the absence of proof beyond a reasonable doubt, in order to rationalize the acquittal of another. Further, each defendant was charged as an aider and abettor in a murder committed by Aponte. In this circumstance, their "[f]inger pointing . . . does not create mutually exclusive antagonistic defenses." *Hana*, *supra* at 360-361. Additionally, Juan Santiago waived his Fifth Amendment rights and, therefore, could be compelled to testify before defendant's jury.

*Santiago*, No. 245582, 2005 WL 2994585, at *6-7.

In denying Petitioner's motion, the state courts clearly applied state law (i.e. Michigan Court Rule 6.121). Generally, a state court's interpretation and application of its own procedural rules is not grounds for habeas relief. *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).

Nonetheless, courts should only grant a request for severance where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[A] state trial court's alleged abuse of discretion [in denying a request for trial severance], without more, is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (citing *Sinistaj v. Burt*, 66 F.3d 804, 805, 808 (6th Cir. 1995)).

Here, the state courts not only applied state law to the severance question, but did so in a manner that there was no risk to any of Petitioner's trial rights. As noted by the Court of Appeals, the trial court granted Petitioner partial severance such that he and his co-defendant (Juan Santiago) had separate juries. Petitioner has not overcome the Court of Appeals's finding that Petitioner's and Juan Santiago's defenses were not mutually inconsistent "let alone irreconcilable." As noted by the state court of appeals, "Defendant and Juan Santiago both blamed co-defendant Aponte. They each agreed that [Petitioner's] role in the offense was to drive Aponte and Juan Santiago to a location near the victim's home. Juan Santiago claimed that whatever he and [Petitioner] did was compelled by Aponte's threats." *Santiago*, No. 245582, 2005 WL 2994585, at *6. Against that backdrop,

the Court concludes that Petitioner is not entitled to habeas relief regarding this claim.

### E. Claim V–Denial of Request to Introduce Evidence Concerning Aponte's Reputation for Violence

In his fifth habeas claim, Petitioner argues that he is entitled to habeas relief because the state courts would not allow him to introduce evidence of Aponte's reputation for violence, in order to establish a duress defense to the armed-robbery charge against him.

As noted by the Michigan Court of Appeals, the trial court denied Petitioner's motion to introduce this evidence because "there had to be a showing that defendant and Juan Santiago were aware of Aponte's reputation." *Santiago*, No. 245582, 2005 WL 2994585, at * 6. The Michigan Court of Appeals agreed:

> Under MRE 405, where evidence of a person's character is admissible, proof may be made either by evidence of reputation, or by specific instances of conduct. Under MRE 803(21), evidence of "[r]eputation of a person's character among associates or in the community" is not hearsay. In order for reputation evidence to be admissible, however, its proponent must show that it is relevant under MRE 401, *i.e.* that it tends to prove (or disprove) a fact of consequence at trial.

> In the present case, defendant sought to introduce evidence of Aponte's reputation for violence in order to establish a duress defense to the armed robbery charge. The trial court ruled that there had to be a showing that defendant and Juan Santiago were aware of Aponte's reputation.

> Although "duress is not a defense to homicide," it is arguably a defense to armed robbery. *See* [*People v.*] *Gimotty,* [216 Mich. App. 254], 257 [(1996)]. To prove duress, a defendant must show:

> (A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

> (B) The conduct in fact caused such fear of death or serious bodily

harm in the mind of the defendant;

(C)  The fear or duress was operating on the mind of the defendant at the time of the alleged act; and

(D)  The defendant committed the act to avoid the threatened harm.

[*People v. Lemons*, 454 Mich. 253, 247; 562 N.W.2d 447 (1997), quoting *People v. Luther*, 395 Mich. 619, 623; 232 N.W.2d 184 (1975).]

In the present case, defendant sought to introduce evidence of Aponte's reputation in order to show that his fear of Aponte was reasonable. However, evidence of Aponte's reputation would not be logically relevant to a duress defense absent a showing that defendant was aware of Aponte's reputation. The trial court did not abuse its discretion in requiring that defendant show he was aware of Aponte's reputation as a prerequisite to presenting the evidence in question.

2005 WL 2994585 at **6-7.

"Generally, 'errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (quoting *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002), *cert. denied*, 540 U.S. 853 (2003)).  Petitioner, however, casts this claim in terms of being denied his constitutional right to a defense, rather than simply as an evidentiary question.

In *Rockwell v. Yukins*, 341 F.3d 507, 512-513 (6th Cir. 2003), the Sixth Circuit described the bounds of clearly established Supreme Court law as it relates to Petitioner's claim:

But the Supreme Court has made it perfectly clear that the right to present a "complete" defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions.  A defendant "does not have an unfettered

right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Rather, [he] "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

As the Supreme Court explained in *United States v. Scheffer*:

> "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" 523 U.S. at 308 [, 118 S.Ct. 1261] (citations omitted).

> A defendant's right to present a "complete" defense, in other words, does not automatically trump state evidentiary rules. The competing interests must be balanced, and "a defendant's interest in presenting . . . evidence may [have to] bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotation marks and citations omitted.)

The states have a weighty interest in the orderly conduct of criminal trials, thus justifying the imposition and enforcement of firm, although not inflexible, rules relating to the presentation of evidence. *Taylor v. Illinois*, 484 U.S. 400, 412 (1988). The Supreme Court held in *Crane v. Kentucky*, 476 U.S. 683, 689-690 (1986) (citations omitted):

> We acknowledge also our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts. In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence . . . . Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability -- even if the defendant would prefer to see that evidence admitted.

Here, the state courts required Petitioner to comply with the state evidentiary rules during his trial. His failure to do so precluded the admission of the evidence of Aponte's reputation for violence.[5] The resolution of this evidentiary question did not violate Petitioner's constitutional right to present a defense. The key to presenting this evidence was in his hands—he just failed to use it.

Even if this Court were to find that the Michigan Court of Appeals's conclusion regarding this evidentiary issue resulted in a violation of Petitioner's federal constitutional rights, given the overwhelming evidence of Petitioner's guilt presented at trial, the violation would not have had a substantial and injurious effect on the case. *Fry v. Pliler*, 551 U.S.112, 121-22 (2007) (holding that, on collateral review, a federal habeas court assesses the prejudicial impact of a state court's constitutional error under the "substantial and injurious effect" standard, not under the more strict "harmless beyond a reasonable doubt" standard, regardless of whether the state court recognized the error and reviewed it under the harmless beyond a reasonable doubt standard) (citing *Brecht v. Abrahamson*, 507 U.S. 619, (1993)). Therefore, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

### F. Claim VI–Prosecutorial Misconduct

In his final habeas claim, Petitioner argues that the misconduct of the prosecutor

---

[5] The state court's ruling is consistent with that of the federal courts ruling on the admissibility of character evidence for purposes of establishing a duress or coercion defense. *See e.g., United States v. Gregg*, 451 F.3d 930, 935 (8th Cir. 2006) ("Evidence of specific instances of a victim's prior violent conduct for purposes of proving a defendant's state of mind ... is only admissible to the extent that defendant establishes knowledge of such prior violent conduct at the time of the conduct underlying the offense charged.")

during trial entitles him to habeas relief.  Specifically, Petitioner claims that the prosecutor committed misconduct by (1) referring to facts not in the record, (2) appealing to the sympathy of the jury, (3) denigrating the defense, and (4) shifting the burden of proof.  The Court finds that Petitioner's claim regarding shifting the burden of proof is procedurally defaulted and he has failed to establish cause or prejudice so as to excuse the default or that a fundamental miscarriage of justice would result if the Court enforced the default.  As to the remaining prosecutorial misconduct claims, the Court concludes that Petitioner has not shown that the state courts' resolution of those claims is contrary to, or an unreasonable application of, clearly established Supreme Court precedent or an unreasonable determination of the facts.

The relevant question in cases of alleged prosecutorial misconduct is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355-1356 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201(1994) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  On habeas review, the role of the federal court is to determine whether the conduct was "so egregious as to render the entire trial fundamentally unfair."  *Serra*, 4 F.3d at 1355 (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1999), *cert. denied*, 444 U.S. 936 (1979)).  [T]he misconduct must be so pronounced and

persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Mason v. Mitchell*, 320 F.3d 604, 635 (2003) (quoting *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (internal quotation marks and citation omitted)). The Sixth Circuit in *Serra* set out the following test to determine if fundamental fairness results from prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Serra*, F.3d at 1355-1356.

The Court notes that "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005).

In this case, the Michigan Court of Appeals summarized the law regarding Petitioner's claims of prosecutorial misconduct, including preservation requirements, as follows:

> Claims of prosecutorial misconduct are reviewed on a case-by-case basis, and the challenged remarks are reviewed in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial. *People v Bahoda*, 448 Mich 261, 266-267 and nn 5-7; 531 NW2d 659 (1995). Where a defendant fails to object to alleged misconduct, "appellate review is precluded unless a curative instruction could not have eliminated possible [resulting] prejudice or [where] failure to consider the issue would result in a miscarriage of justice." *Noble*, *supra* at 660; *see also People v Schutte*, 240 Mich App 713, 722; 613 NW2d 370 (2000). As with other unpreserved issues, defendant must show a plain error (i.e., one that is clear or obvious) affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130

(1999); *People v Grant*, 445 Mich 535, 548-549, 552-553; 520 NW2d 123 (1994); *see also Schutte*, *supra* at 720.

*Santiago*, No. 245582, 2005 WL 2994585, at 8 (footnote omitted).  The Court of Appeals then addressed Petitioner's specific claims of prosecutorial misconduct as follows:

### A.  Referring to Facts Not of Record.

Defendant complains that the prosecutor improperly stated that defendant dropped off Aponte and Juan Santiago a block from the victim's house, when testimony indicated that the distance was actually a mile.  "A prosecutor may not argue the effect of testimony that was not entered into evidence at trial." *Stanaway*, *supra* at 686.  Here, however, defendant indicated in his police statements that he dropped off Aponte and Juan Santiago a block from the victim's home.  There was also testimony that the distance was approximately a mile from the victim's home. At best, there was a question of fact concerning the location of the drop-off point.  In any event, there was factual support for the prosecutor's argument and, therefore, the prosecutor did not commit misconduct.

Defendant also argues that the prosecutor improperly used David Santiago's police statement as substantive evidence when he mentioned that, contrary to David's trial testimony, David told the police that, during the initial ride to the victim's home, "they start talking immediately about the robbery." We disagree.  The prosecutor properly pointed out that there was a conflict between David's trial testimony, and what he told the police.

### B.  Appealing to Sympathy

A prosecutor may not appeal to the sympathies and emotions of the jurors. *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). Here, the prosecutor mentioned that the victim was a giving person, who would no longer be able to give to the community.  Viewed in context, the prosecutor made it clear that he wanted the jury to follow the law and the evidence, and not act upon sympathy or emotion.  The trial court instructed the jury to the same effect. Therefore, there was no misconduct that deprived defendant of a fair trial.

### C.  Denigrating the Defense

"A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *Watson*, *supra* at 592. Here, the prosecutor stated that Juan and David Santiago had perjured themselves and attempted to perpetrate a fraud. Although the language used by the prosecutor was strong, the prosecutor could properly argue that Juan and David were not worthy of belief. Further, contrary to what defendant asserts, the prosecutor did not accuse either defendant or his attorney of perpetrating a fraud. Thus, the prosecutor's conduct was not improper, and there was no plain error affecting defendant's substantial rights in this regard.

### D. Shifting the Burden of Proof

As defendant argues, "a defendant has no burden to produce any evidence." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). However, "once the defense advances evidence or a theory, argument on the inferences created do not shift the burden of proof." *Id.*

Here, the prosecutor urged the jury to disregard defendant's argument that he should be acquitted because "all he did was drop them off." The prosecutor then asked, "what valid legal justification did defense counsel give you for this brutal murder?" Defendant's objection was sustained.

While a prosecutor may comment on a defendant's theory of the case, defendant never contended that this case involved a justifiable homicide. Thus, the prosecutor's comment was improper. However, defendant's objection was sustained, and the trial court later instructed the jury that defendant did not have a duty to prove anything, and that arguments of counsel are not evidence and must not be considered. Jurors are presumed to follow the court's instructions unless the contrary is clearly shown. *People v McAlister*, 203 Mich App 495, 504; 513 NW2d 431 (1994). Because no contrary showing has been made here, appellate relief is not warranted as there is nothing to support that this comments affected defendant's substantial rights.

Defendant also claims that the prosecutor impermissibly reduced his burden of proof when he mentioned that, while defendant had a trial by a judge and a jury, the victim could not appeal what happened to him. Defendant cites no legal authority for the argument that this comment somehow lessened the prosecutor's burden of proof. Argument must be supported by citation to appropriate authority or policy. *People v Sowders*, 164 Mich App 36, 49; 417 NW2d 78 (1987). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *People v Harris*, 261

Mich App 44, 50; 680 NW2d 17 (2004). Regardless, the jury is presumed to have followed the court's instructions that the prosecutor has the burden of proof. Thus, defendant has failed to show that this comment amounted to misconduct that deprived him of a fair trial.

*Santiago*, No. 245582, 2005 WL 2994585, at *8-10.

Initially, the Court finds that Petitioner's claim that the prosecutor improperly reduced his burden of proof by stating that, "while defendant had a trial by judge and jury, the victim could not appeal what had had happened to him," is procedurally defaulted. *Santiago*, No. 245582, 2005 WL 2994585, at *9-10.

When the state courts do not review on their merits a petitioner's claims due to the petitioner's failure to comply with the state courts' procedures, the federal courts ordinarily do not consider the claims on habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 77, 80 (1991). This "procedural default" occurs when three elements are satisfied: (1) the petitioner has failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim. *Id.* (citing *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003)).

Applying the three-part test for procedural default to the facts herein, first, Petitioner clearly failed to comply with state procedural rules concerning preservation. Second, the Michigan Court of Appeals enforced these procedural rules. A state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits or by ruling on the merits in the alternative (i.e. in this case

how the Michigan Court of Appeals noted that Petitioner had abandoned his claim that the prosecutor reduced the burden of proof, but then noted that "regardless" Petitioner had failed to show, in light of the trial court's instructions, how the remark had caused him to be deprived of his right to a fair trial), *see Pearl v. Cason*, 219 F. Supp. 2d 820, 828 (E.D. Mich. 2003) (citing *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989) and *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991)). Third, the Michigan procedural rules clearly qualify as independent and adequate state grounds and were firmly established and regularly followed at the time of their application in Petitioner's case.

Nonetheless, a federal court can excuse procedural default and consider defaulted claims on habeas review if the petitioner demonstrates there was cause for the default and actual prejudice resulting from the default, or that a miscarriage of justice will result if the federal court declines to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). However, because Petitioner apparently did not realize that he had procedurally defaulted this claim, he did not attempt to show cause for the default. As Petitioner has failed to establish cause to excuse the default, there is no need to address the prejudice prong. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983), *cert. denied*, 465 U.S. 1106 (1984). Petitioner also has failed to demonstrate that a fundamental miscarriage of justice would result if this Court declined to excuse the default.

Finally, in considering the objective reasonableness of the Michigan Court of Appeals's handling of remaining claims of prosecutorial misconduct, the Court finds that the cautionary instructions given by the trial court cured any potential prejudice to Petitioner.

29

Such cautionary or limiting instructions have been held to prevent due process violations from occurring due to purported prosecutorial misconduct, especially when such misconduct occurs during closing argument. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), *cert. denied*, 549 U.S.1264 (2007). Therefore, the Court finds that Petitioner is not entitled to habeas relief on his prosecutorial-misconduct claims.

## G. Certificate of Appealability

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES TO ISSUE** Petitioner a certificate of appealability and leave to proceed *in forma pauperis* on appeal.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: May 25, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2010, by electronic or ordinary mail.

s/Ruth A. Gunther
Case Manager